193 So.2d 47 (1966)
Charlie William COLE, Appellant,
v.
The STATE of Florida, Appellee.
No. H-476.
District Court of Appeal of Florida. First District.
December 8, 1966.
Rehearing Denied January 12, 1967.
T. Edward Austin, Jr., Public Defender, and Charles J. Franson, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and T.T. Turnbull, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Judge.
The appellant was convicted of the crime of manslaughter by the Criminal Court of Record for Duval County and has appealed from his judgment of conviction and sentence, based upon a jury verdict.
The sole question for our determination in this appeal is whether the trial court committed reversible error during the trial by refusing to allow the appellant's attorney to interrogate the deceased's sister for the purpose of establishing the violent and dangerous character of the deceased.
The appellant was informed against in the said court for murder in the second degree. Upon a jury trial, he was found guilty of manslaughter and sentenced to ten years imprisonment in the State Prison. His motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial was denied by an order of the trial court. This appeal is taken from that order and the judgment of conviction and sentence.
This prosecution arose from a shooting that took place in the Lenape Bar, in the City of Jacksonville, Duval County, at about 1:30 o'clock in the morning of August 28, 1965. Briefly stated, the prosecution evidence at the trial established the following facts:
The victim of the shooting was the deceased, James Calhoun, who was five feet ten and a half inches tall and weighed approximately 200 pounds, and whose death was caused by a single bullet entering his abdomen.
A prosecution witness testified that he was in the said bar just before the shooting and saw the appellant, Cole, sitting in a booth, when Calhoun went over to the booth with an open knife in his hand and slapped Cole. The witness then left the bar to find a police officer and did not actually see the shooting.
The said witness found a city police officer, who testified that he went into the bar and saw Cole, standing ten or twelve feet from Calhoun, shouting "You slapped me, you slapped me, you slapped me, you slapped my face," and at that instant a pistol fired one shot, so the officer ran to *48 Cole and pinned his arms to his side and took the gun from him. The officer examined Calhoun and felt an object in a front pocket that felt like a knife.
Another witness for the prosecution was Pearly Mae Horn, who testified that she was the deceased's sister and that she had identified him at the morgue.
Among other prosecution witnesses, an employee of the bar testified that, after Calhoun slapped Cole, the latter held up his hands "Like he was asking for mercy."
The key factual question presented at the trial for the jury's determination in the above evidentiary situation was whether Cole acted in self-defense in shooting Calhoun, and the trial court ably instructed the jury concerning justifiable and excusable homicide, including the citizen's right to resist any attempt to murder, or commit any felony upon, him.
At the close of the prosecution's case, the appellant's attorney announced his intention to recall to the witness stand the sister of the deceased, Pearly Mae Horn, who had testified as mentioned above. The court asked the attorney as to the purpose of calling the witness, and the attorney answered that the said witness can testify to "the fact that the decedent had a record for cuttings and was a violent man." The court then said: "The foundation is going to have to be laid first. The defendant is going to have to tell us that he was aware of it." To this the attorney said: "He can't do it. The defendant didn't know." The court thus refused to allow the defense to interrogate Calhoun's sister concerning his violent character, although Cole was relying on the defense of self-defense.
The action of the trial court in refusing to allow the said witness to be recalled by the defense attorney for the purpose he announced would have been eminently correct under the law established in this state if the purpose of the interrogation had been to explain the acts of the defendant  to prove the deceased's reputation for violence and then to prove that the defendant knew of such reputation. See Palm v. State, 135 Fla. 258, 184 So. 881 (1938) and Freeman v. State, 97 So.2d 633 (Fla. App. 1957).
The appellant, however, contends in this appeal that testimony concerning a deceased's reputation for violence is admissible, even if the defendant does not know of that reputation, where that testimony explains, or will give meaning, significance, or point to the conduct of the deceased at the time of the killing, or will tend to do so. The appellant bases this contention upon the rule recognized by the Supreme Court of Florida in Garner v. State, 28 Fla. 113, 9 So. 835 (1891). In that case the Supreme Court held:
"Evidence of the violent and dangerous character of the deceased is admissible to show, or as tending to show, that a defendant has acted in self-defense, or, in other words, under such circumstances as would have naturally caused a man of ordinary reason to believe that he was at the time of the killing in imminent danger of losing his life or suffering great bodily harm at the hands of the deceased; but it is not admissible for this purpose, except where it explains, or will give meaning, significance, or point to the conduct of the deceased at the time of the killing, or will tend to do so; and such conduct of the deceased, at the time of the killing, which it is proposed thus to explain, must be shown before the auxiliary evidence of such character can be introduced. Horbach v. State, 43 Tex. 242; Hudson v. State, 6 Tex. App. 565, 573; Franklin v. State, 29 Ala. 14; Eiland v. State, 52 Ala. 322; Roberts v. State, 68 Ala. 156." * * * "If there is at the killing any demonstration upon the part of the deceased which his dangerous character would reasonably and naturally aid, explain, or give point or significance to, as tending to make out a case of self-defense upon the part of the accused, evidence of such character should be admitted. The philosophy of *49 the introduction of this kind of evidence is founded in human nature. Though in the eyes of the law it is no less a crime to kill a brutal, dangerous, or otherwise bad man, without apparent cause for reasonable belief upon the part of the slayer of imminent danger to his life, or of serious bodily harm, creating an immediate necessity for the killing, yet the same menacing demonstration which, made by a man of peaceable and law-abiding character, would suggest no sense of danger would, when made by one of of a violent and dangerous nature, reasonably and naturally arouse genuine feelings of imminent danger to life or of great bodily harm. Men who are assailed act in defending themselves with promptness and force in proportion to the violent and dangerous character of the assailant. The law, in deciding whether or not a person has in slaying another acted under a reasonable belief that he was in imminent danger of life or great bodily harm, considers all the circumstances, and, among others, the dangerous character of the deceased, when it is by the circumstances of the killing rendered admissible in evidence, or becomes a part of the res gestae, as it is and does where it illustrates the conduct of the deceased. The accused is entitled to have the jury see all the circumstances as they existed, and to judge him accordingly. This they could not do if, in such cases, the dangerous character of the deceased was kept from them. Horbach v. State; Spivey v. State, supra [58 Miss. 858]; State v. Bryant, 55 Mo. 75, 78, 79; State v. Keene, 50 Mo. 357; State v. Hicks, 27 Mo. 588; Hurd v. People, 25 Mich. 405; Monroe v. State, 5 Ga. 85, 137; Pritchett v. State, 22 Ala. 39." (Emphasis supplied).
The portion of the opinion emphasized in the above quotation sets forth the rule particularly relied upon by the appellant here.
The Supreme Court's reasoning in the Garner case was reflected later by that court in its decision in Fine v. State, 70 Fla. 412, 70 So. 379 (1915), in which the court declared:
"Upon the trial of an indictment for murder where the defense is self-defense, the character of the deceased as to peace and quiet frequently becomes a material subject for investigation. If the evidence, as in this case, is conflicting upon the question as to who began the difficulty, or whether the deceased's conduct or actions just prior to the encounter reasonably justified the belief that he was about to make an assault upon the accused, evidence as to the general reputation of the deceased for peace and quiet may lead the jury to a correct conclusion as to the guilt of the accused, by enabling them to determine who really began the difficulty, and the reasonableness of the defendant's belief as to imminent danger to himself of great bodily harm or death from the deceased."
In a third decision  Copeland v. State, 41 Fla. 320, 26 So. 319 (1899)  the Supreme Court of Florida expressly followed its reasoning in the Garner case, saying:
"This court has carefully considered the conditions under which, in cases of homicide, evidence of the reputation of the deceased, as a violent, quarrelsome, and dangerous person, can be given. In Garner's Case, reported in 28 Fla. 113, 9 So. 835, it was held that evidence of the violent and dangerous character of the deceased is admissible to show, or as tending to show, that a defendant has acted in self-defense, or under such circumstances as would naturally cause a man of ordinary reason to believe himself to be, at the time of the killing, in imminent danger of losing his life, or of suffering great bodily harm, at the hands of the deceased; but such evidence is not admissible for this purpose, except when it explains, or will give meaning, significance, or point, to the conduct of the deceased at the time of the killing, or will tend to do so: and such conduct *50 of the deceased at the time of the killing, which it is proposed to thus explain, must be shown before the auxiliary evidence of such character can be introduced. And when a defendant proposes to show the character of the deceased in aid of his plea of self-defense, under the circumstances stated, the evidence must be confined to general reputation of the deceased as a violent or dangerous person."
Among other decisions in which the Supreme Court of Florida held to the same effect are Roten v. State, 31 Fla. 514, 12 So. 910 (1893), and Allen v. State, 38 Fla. 44, 20 So. 807 (1896).
In the case at bar the appellant submits that all of the evidence that went before the jury was uncontradicted on the point of the assault by the deceased upon the appellant before the fatal shooting, and argues that the proffered testimony as to the violent and dangerous character of the deceased was admissible "to explain or give meaning, significance, or point to the conduct of the deceased at the time of the killing as stated in the Garner case."
It is our opinion that this position of doctrine in the Garner case and the other the appellant is well taken under the decisions cited above, and that the trial court erred in refusing to allow the defense to interrogate the deceased's sister as to his reputation. We also think that that error was reversible error because of its prejudicial effect upon the appellant. The appellant's entire defense was self-defense and the validity of that defense obviously hinged to a large extent upon evidence as to the deceased's violent or dangerous character  evidence that would give meaning, significance, or point to the conduct of the deceased at the time of the killing.
Therefore the final judgment appealed from herein must be and it is reversed and the cause remanded for a new trial in accordance with the views expressed herein.
Reversed and remanded for a new trial.
WIGGINTON, Acting C.J., and SACK, J., concur.