204 So.2d 842 (1967)
David Edward FREEMAN
v.
STATE of Mississippi.
No. 44518.
Supreme Court of Mississippi.
December 4, 1967.
Rex K. Jones, Hattiesburg, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
PATTERSON, Justice:
Appellant, David Edward Freeman, was indicted and tried for murder in the Circuit Court of Forrest County. He was found guilty of manslaughter and sentenced to serve twenty years in the state penitentiary. He appeals here, assigning as error that the court erred in excluding evidence *843 offered by the defendant as to the character and reputation of the deceased and in excluding evidence offered to show the record of convictions of the deceased.
Appellant and deceased, George McSwain, Jr., were acquainted only slightly, if at all. Appellant drove to Hattiesburg from Bogalusa, Louisiana with his mother, girl friend and other members of his family on Labor Day 1966. They went by to see a friend, Olean Faulkner, who lived in a rooming house next door to the Star Cafe in Hattiesburg. Appellant testified that he went into the rooming house and told Olean that his mother wanted to speak to her and that he then went into the cafe. According to the testimony of a witness for the State, the defendant used profanity upon entering the cafe and was told by the proprietor that no cursing was allowed within the premises and that the defendant must leave. Appellant left the cafe, according to his testimony, and returned to his car which was parked in front of the rooming house. As he went out the door of the cafe he looked back and saw McSwain and the proprietor go out the back door of the cafe. The defendant, who admitted carrying a pistol under his shirt, further testified that he and his family were getting into the car and that he was standing beside it when McSwain kicked open the door of the rooming house and fired at him, whereupon he whirled and "went to shooting right directly where the shot was fired" killing McSwain. Appellant's mother corroborated his version of the shooting and added that when McSwain, holding a rifle in his hands, came to the door of the rooming house and kicked it open, appellant's girl friend, who was in the car, called to McSwain and pled with him not to shoot into the car because her children were there.
The proprietor of the cafe testified that Olean was with the appellant when he came into the cafe and that he directed the appellant to leave due to his profane language. Anticipating trouble, he then went next door to the rooming house to get his rifle and while there heard three or four shots from the front of the building. Immediately after hearing the shots he ran down the hallway to the front of the rooming house and found McSwain, unarmed, lying in the doorway. He lifted McSwain, observed his condition, and laid him back down. In this process his hands became covered with blood and some of the blood was transferred to the rifle, which, according to his testimony, he returned to his room to get. He said that it was he, rather than McSwain, who brought the rifle to the front of the building, and that the rifle was never fired.
The testimony of other witnesses was in conflict as to whether there were three or four shots fired, although it is undisputed that appellant fired three times. There is no testimony, other than that of the proprietor, as to whether or not the rifle had been recently fired, though there is testimony that it was fully loaded. No cartridge hulls from it were observed at the scene; however, no search was made therefor.
The testimony is in hopeless conflict as to whether the deceased fired at all, and if so, who fired the first shot. The evidence does disclose, however, that sometime prior to this incident appellant had lived with Olean Faulkner and that at the time of the shooting Olean and deceased were living in the same rooming house. The evidence also establishes that there were no words spoken between appellant and the deceased, with the possible exception of appellant's words immediately prior to the shooting to the deceased, "Man, yes, don't shoot in this car. I got my families in there."
The assignment of error pertaining to the police record of the deceased is not well taken for the reason that it does not disclose any trait or characteristic of violence and, as such, is irrelevant and the court was correct in excluding the same.
The assignment of error relative to evidence of the decedent's reputation for peace and violence in the community in which he lived, in our opinion, is well *844 taken. The principal question upon which there was conflicting evidence is "who was the aggressor?" This is the heart and soul of the case as the defendant admitted the shooting, but proclaimed that he did so in his necessary self-defense. The general rule is that the decedent's reputation for peace or violence is not admissible in evidence unless the trait of violence is known to the person pleading self-defense. However, there is an exception to this rule which is as broad as the rule itself that where the question of "who was the aggressor" is before the court, then this type of evidence is admissible. In 40 C.J.S. Homicide § 272 at 1223 (1944), the rule is stated:
In order to admit evidence of the violent character of deceased as bearing on the apprehension of danger by the accused, it must appear to have been known to him; consequently evidence of his knowledge of such character is admissible. As bearing on the question of who was the aggressor, however, evidence of the character of the deceased is admissible although the accused had no knowledge thereof. (Emphasis added)
1 Wigmore, Evidence section 63 at 467, 470-471 (3d ed. 1940), explains why such evidence is relevant to the issue of whether the deceased or the accused was the aggressor:
When the issue of self defense is made in a trial for homicide, and thus a controversy arises whether the deceased was the aggressor, one's persuasion will be more or less affected by the character of the deceased; it may throw much light on the probabilities of the deceased's action.
* * * * * *
The reason for the hesitation, once observable in many courts, in recognizing this sort of evidence, and the source of much confusion upon the subject, was the frequent failure to distinguish this use of the deceased's character from another use, perfectly well settled, but subject to a peculiar limitation not here necessary,  the use of communicated character for violence to show the reasonableness of the defendant's apprehension of violence. As the purpose there is to show the defendant's state of mind, it is obvious that the deceased's character, as affecting the defendant's apprehensions, must have become known to him; i.e. proof of the character must indispensably be accompanied by proof of its communication to the defendant; else it is irrelevant. In the present use, this additional element of communication is unnecessary; for the question is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of objective occurrence, not of subjective belief. (Emphasis added)
In 26 Am.Jur. Homicide section 346 (1940), we find a similar explanation:
The necessity of the accused showing, as a foundation for the introduction of evidence of the violent and turbulent character of the deceased in support of his claim of self-defense, that he had knowledge at the time of the homicide of such bad character or reputation of the deceased, depends largely upon the purpose for which evidence is offered. If there is doubt whether the deceased was the aggressor, or doubt as to what was his purpose or intent in making any certain claimed or proved demonstration, the evidence of his bad character or reputation is admissible in support of the probabilities to be inferred therefrom and as tending to corroborate testimony for the accused as to the circumstances of the conflict, whether the accused had knowledge of such character or not. (Emphasis added)
Further authority for this position may be found in 1 A.L.R.3d 571, 601 (1965):
The courts have at times failed to distinguish the purpose of evidence of the turbulent character of the victim of a homicide or assault to corroborate testimony *845 as to the circumstances of the encounter from the entirely different purpose of showing that, certain facts being conceded or found, the accused had reasonable cause to, and did, apprehend death or serious bodily injury, and was justified, on the ground of self-defense, in acting as he did. However, where the court's attention has been called to the distinction, it has generally been held that evidence of the turbulent character of the deceased or party assaulted is admissible on a trial for homicide or for assault, as tending to corroborate testimony for the accused as to the circumstances of the conflict, whether the accused had knowledge of such character or not.
Moreover, the authorities in our own state are in accord with the general rules announced above. In Shinall v. State, 199 So.2d 251, 257 (Miss. 1967), we said:
* * * Ordinarily the character or reputation of the deceased person is not involved as part of the issue in a murder case, and proof relative thereto is generally inadmissible.
There are exceptions to this general rule. The violent, dangerous and turbulent character of a deceased may be shown: * * * (C) where it is doubtful as to who the aggressor was at the time of the homicide * * *
See also Smith v. State, 75 Miss. 542, 23 So. 260 (1898), where we said:
"When there is evidence showing, or tending to show that the defendant acted in self-defense, under reasonable apprehension that his life was in danger, or that he was in great danger of bodily harm, because of some act of the deceased, done at the time of the killing, or if the evidence in respect to the homicide tending to prove the guilt of the defendant is wholly circumstantial and the character of the slaying is in doubt, evidence of the bad character of the deceased, in this respect, is admissible." (75 Miss. at 554-555, 23 So. at 264).
In Hart v. State, 38 Fla. 39, 20 So. 805, a case where there was no testimony save that of the defendant showing any attack by deceased, it was expressly held that, the statute making the defendant a competent witness, his testimony alone is enough to lay the predicate for the admission of proof of the violent character of the deceased. * * * It was proper to go to the jury to be given by them such weight as they thought it entitled to in "exhibiting, * * * the deceased before the jury, just as he confronted the defendant when he shot him." (75 Miss. at 555-556, 23 So. at 264-265).
Compare Pinter v. State, 203 Miss. 344, 348, 34 So.2d 723, 724 (1948), where we said:
The second assignment is based upon the exclusion of testimony that the deceased had the reputation among members of his family as dangerous, quarrelsome, and abusive when intoxicated. In no event would such testimony, even if relating to a general reputation, be relevant unless upon the issue of aggression. Neither the version of the confession nor that given by the testimony of the defendant made this issue relevant. Self-defense was not pleaded. (Emphasis added).
The case of Cole v. State, 193 So.2d 47, 48 (Fla.Ct.App. 1966), is peculiarly applicable to the instant case. There the appellant contended:
* * * that testimony concerning a deceased's reputation for violence is admissible, even if the defendant does not know of that reputation, where that testimony explains, or will give meaning, significance, or point to the conduct of the deceased at the time of the killing, or will tend to do so. The appellant bases this contention upon the rule recognized by the Supreme Court of Florida in Garner v. State, 28 Fla. 113, 9 So. 835 (1891).
*846 The court agreed with the appellant's contention and reversed the conviction, saying:
* * * Men who are assailed act in defending themselves with promptness and force in proportion to the violent and dangerous character of the assailant. The law, in deciding whether or not a person has in slaying another acted under a reasonable belief that he was in imminent danger of life or great bodily harm, considers all the circumstances, and, among others, the dangerous character of the deceased, when it is by the circumstances of the killing rendered admissible in evidence, or becomes a part of the res gestae, as it is and does where it illustrates the conduct of the deceased. The accused is entitled to have the jury see all the circumstances as they existed, and to judge him accordingly. This they could not do if, in such cases, the dangerous character of the deceased was kept from them. (193 So.2d at 49)
The State does not question the preservation by the defendant of the foregoing question of evidence, but rather defends the position of the trial court in excluding this evidence by citing the cases of Pinter v. State, supra, and Newsome v. State, 197 Miss. 797, 20 So.2d 708 (1945). An examination of Pinter indicates that the general reputation of a decedent could in no event be relevant unless upon the issue of aggression, thus lending itself to the support of the position of the defendant. Newsome is clearly distinguishable from this case as the basis thereof is that the desperate and dangerous character of a person killed cannot be proved by antecedent acts of violence, the distinguishing feature being precisely that here the general reputation of the decedent was sought to be introduced into evidence rather than specific and antecedent acts of violence. It is our opinion that the authorities cited by the State are insufficient to overcome the rule set out above which permits the introduction of evidence as to the general reputation of the decedent for peace or violence when one of the issues to be decided by the jury in reaching its verdict is that of determining "who was the aggressor." We cannot conjecture as to what effect the testimony offered by the defendant and excluded would have had upon the jury, but we have no hesitancy in holding that he had the inviolate right under the circumstances to offer it, the exclusion of which constitutes reversible error.
Though not argued by the State, the question has arisen within the Court whether the evidence was properly presented to the trial court and properly preserved for consideration on appeal. The record reveals the following proceedings relating to the reputation of the deceased:
Q. All right. Do you know, or did you know in his lifetime one George McSwain, Jr?
A. Yes, Sir, I knowed him.
Q. How long did you know him?
A. I been knowing him a pretty good little while. We was practically raised up together.
Q. You were raised up together?
A. Yes, Sir.
Q. Did you know him in the community where he lived?
A. Yes, Sir.
BY HON. JAMES FINCH:
Just a minute.
BY THE COURT:
Yes, let the jury go in the jury room.
(HERE THE JURY WAS EXCLUDED)
Q. From your associations with him and knowing him, did you know his reputation in the community in which he lived for peace and violence?
A. Well, I figured he was a bad character.

*847 Q. Well either say yes or no. I mean you either know or you don't know. Did you know his reputation for peace and violence?
A. I don't know what you means 'bout dat.
BY HON. JAMES FINCH:
All right. We object and that ends the inquiry.
BY THE COURT:
Yes, that's all. I sustain their objection. Stand aside.
(WITNESS EXCUSED)
BY HON. REX K. JONES:
If the Court please, let the record show that if this last witness had been allowed to testify that I would have proved the general reputation of the deceased for peace and violence in the community in which he lived.
It will be noted that the jury was excluded at the conclusion of the prefatory questions, whereupon the witness was asked by his attorney "Did you know his reputation for peace and violence?" This, of course, does not refer to his general reputation in the community which we have many times held to be essential in determining a trait or characteristic of a person. The proffer made by the defendant, however, correctly states the rule, as the defendant's attorney stated that if permitted by the court, he would prove the general reputation of the deceased for peace or violence in the community in which he lived. The response, "I don't know what you means 'bout dat," in reply to a question relating to the deceased's reputation was evidently misunderstood or misinterpreted by the district attorney to mean that the witness had no knowledge of decedent's reputation, whereas an examination of it signifies that the witness meant merely that he did not understand the question and negates the construction put upon his answer by the district attorney. The court was doubtless under the same mistaken impression as it sustained the district attorney's objection.
It is the opinion of the majority of the Court that the right of appeal was properly preserved by the defense in its proffer of evidence and the defendant should not be deprived of a review of his position by the omission of the word "general" in regard to the deceased's reputation in the absence of the jury or that he be deprived thereof by a construction of the words "I don't know what you means 'bout dat," that the witness was without knowledge of the deceased's reputation, thus foreclosing to the defendant the right to prove the same.
Reversed and remanded.
RODGERS, JONES, BRADY and INZER, JJ., concur.
ETHRIDGE, Chief Justice (dissenting):
The controlling opinion correctly states the rule: Decedent's general reputation for peace or violence is not admissible in evidence unless the trait of violence is known to the person pleading self-defense, but a broad "exception" permits such evidence where an issue is whether deceased was the aggressor. Our difference is in application of the rule to the evidence in this case, and in particular to the offer of proof made by appellant's counsel.
In perspective, this was a lengthy trial with a large number of witnesses testifying for both sides. The jury found defendant guilty. The trial court committed no reversible error, unless it arose through the testimony of defendant's witness R.T. Holmes, quoted in the controlling opinion.
Where an objection has been sustained to a question, an offer of proof is appropriate The rejection of evidence not apparently admissible is not error, in the absence of an offer or sufficient statement of the purpose of its introduction, by which the court may determine its relevancy or admissibility. Accordingly, it is proper for the trial court *848 to overrule an offer of proof where the language of the offer is general, vague, and not sufficiently specific. An offer should clearly inform the court as to what is intended to be proved, and the language should be such as to enable the court to determine whether the evidence sought to be offered is admissible. Annot., 89 A.L.R.2d 279, 310 (1963); 23 C.J.S. Criminal Law § 1029 (1961); 53 Am.Jur. Trial § 102 (1945); 88 C.J.S. Trial §§ 73-80 (1955). This Court has consistently followed this rule requiring definiteness and sufficiency of an offer of proof. McArdle's Estate v. City of Jackson, 215 Miss. 571, 586, 61 So.2d 400, 405, 63 So.2d 101 (1952); Stone v. State, 210 Miss. 218, 49 So.2d 263 (1950); Boyd v. State, 202 Miss. 509, 32 So.2d 452 (1947). In short, the offer must clearly state what the party making it intends to prove. Counsel must not leave the offer in an indefinite or doubtful shape. The offer must be so full and specific that its exclusion would be erroneous from any point of view. 53 Am.Jur. Trial § 102 (1945). As a practical matter, therefore, a trial court should not be put in error by ruling on an indefinite and inconclusive offer of proof.
With deference, it seems to me that, with this evidentiary question placed in the perspective of a lengthy trial with no other errors, the testimony of the witness Holmes and the offer of proof by appellant's counsel are insufficient to warrant reversal of this conviction. Holmes was asked whether he knew the deceased's "reputation for peace and violence," omitting the requirement of general reputation in the community in which he lived for peace or violence. To which the witness replied, "I don't know what you means 'bout dat." That statement could be interpreted in one of two ways: The witness was either saying he did not understand the question, or he did not know such general reputation. If the latter, of course, there was no error. If the former, it was the duty of appellant's counsel to elicit further answers from this witness, or request the court's permission for that purpose. He did not do so. Hence the trial court, in the midst of a lengthy trial, sustained the State's objection. At that point, the offer of evidence was insufficient; certainly it could not be said that the trial court abused its discretion.
Appellant's counsel then stated that if the witness had been allowed to testify he would have proved by him deceased's general reputation for "peace or violence." However, he did not state whether that witness would have testified that such general reputation was bad or good. That is left wholly to surmise or conjecture.
The offer of proof was general, vague, and not sufficiently specific. Moreover, if the case is reversed, exactly what this witness will testify on this particular issue has not been established. Hence I cannot say that the trial court abused its discretion in sustaining the objection to this offer of proof.
GILLESPIE, P.J., and SMITH and ROBERTSON, JJ., join in this dissent.