336 So.2d 493 (1976)
Arthur Earl KINNEY
v.
STATE of Mississippi.
No. 49089.
Supreme Court of Mississippi.
August 10, 1976.
*494 Brown, Alexander & Sanders, Jackson, for appellant.
A.F. Summer, Atty. Gen., by John C. Ellis, Special Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, ROBERTSON and BROOM, JJ.
BROOM, Justice, For the Court:
Aggravated assault upon a law enforcement officer ("Pete" Hines) was the offense for which Kinney (appellant) was convicted in the Circuit Court of Montgomery County. He appeals from a sentence of twenty-five years imprisonment. We affirm.
On September 2, 1974, two City of Winona, Mississippi policemen (Hines and Brown) in a patrol car backed out of the Winona police station garage when appellant was observed driving a car in a reckless manner. Brown described appellant's speed as "excessive." Hines testified:
I had gone down Front Street a little ways and I saw him as he was fixing to cross the railroad track and, all of a sudden, he started spinning his wheels and crossed the railroad track and made a right turn and started fish-tailing  his car fishtailed and he was driving in a reckless manner.
The patrol car in which the policemen pursued appellant (after observing him driving in a reckless manner) was equipped with shining blue lights and had the proper police insignia. At the end of the pursuit, Hines (dressed in a police uniform), asked appellant for his driver's license. In response appellant, armed with a gun in each hand, fired two shots into the body of Hines. Then as Hines was crawling, appellant fired several more shots at him. Hines received treatment for his wounds at Baptist Hospital in Jackson. Other evidence will be set forth as the issues are discussed, but it is to be noted that appellant did not testify at the trial on the merits.

I.
Appellant's contention that he, being under twenty-one years of age, was entitled to have the indictment quashed since our state laws effectively prohibit persons under twenty-one from serving on juries is without merit. Joyce v. State, 327 So.2d 255 (Miss. 1976).

II.
Next appellant argues that he was denied due process of law when (at the hearing of appellant's motion to quash the indictment) the court "refused to allow him to present evidence of a disparity in the number of black persons serving on juries in the county and further refused to allow him to make a proffer of such proof." Appellant sought to call each member of the Board of Supervisors of Montgomery County, as stated by counsel, "so that the names can be read by the ... supervisors and the persons listed can be identified by race." Appellant put on as his witness one supervisor (Wood) whose testimony demonstrated that the supervisors' districts had recently been revised as to boundary lines and that he could not identify every voter in his *495 district. Supervisor Wood stated that jurors were selected by starting at the top of the voters list and "take the fifth number on down." His testimony was corroborated by the testimony of the circuit clerk whom appellant presented. Appellant also put on the stand the sheriff, who from a venire facias identified some jurors as white and some as black; others he could not identify.
When the appellant sought to have each supervisor brought in to read the names from the voters list of his district, the trial judge stated into the record that the case had "been set for trial for a week in this term (April 1975) of court and is back at this term as a result of a hung jury in the October Term." The judge offered appellant's counsel an opportunity to place any statistical data into the record during the term of court at which the trial occurred in April 1975, but counsel made no attempt to do so according to the record. No explanation of counsel's failure in this regard appears of record. Obviously several months passed since appellant's first trial, during which time he had every opportunity to obtain from the public records prior to his next trial names of voters plus any data concerning the racial makeup of the juries. The record does not reflect that appellant made any attempt to interview or interrogate either of the supervisors or anyone else prior to trial or at any other time as to the names or race of the voters or jurors except at the hearing of the motion during the term of court in which appellant was convicted. The record shows that there were approximately 7,700 registered voters in Montgomery County, but the court has not found either in the record or in the briefs any facts as to what percentage of the total population or registered voters was black or white.
We rule that the trial judge was within his sound discretion in not delaying the trial for counsel to put on the stand each supervisor "so that the names can be read" by them. The trial judge's sound discretion is obvious when, as a supervisor had already stated, he could not possibly know the race of every voter within his district. As regards the term of court (April 1975) at which appellant was convicted as well as for the April and October 1974 terms, the record is clear (as the trial judge found) that the makeup or composition of juries at least for those terms of the court were selected without regard to race, and that the county officials did not systematically exclude blacks from jury service although percentages of the racial makeup of the county's population and registered voters are not before the court.
Additionally, appellant did not cause the record to show precisely what he intended to prove by the supervisors. In the dialogue between counsel for appellant, counsel for the state, and the court concerning testimony by the members of the board of supervisors, appellant's counsel at one place indicated he wanted to get the voters list in evidence and the names "read by the members of the Board of Supervisors and the persons listed can be identified by race." At another place, counsel merely said "we want the testimony of the Board of Supervisors as to those records." The correct rule in this regard is that in making proffer of testimony rejected by the trial court, counsel must clearly state what he intended to prove by such testimony. 75 Am.Jur.2d Trial, § 131 (1975). As stated by Ethridge, J., dissenting in Freeman v. State, 204 So.2d 842 (Miss. 1967):
Counsel must not leave the offer in an indefinite or doubtful shape. The offer must be so full and specific that its exclusion would be erroneous from any point of view. 53 Am.Jur. Trial § 102 (1945). As a practical matter, therefore, a trial court should not be put in error by ruling on an indefinite and inconclusive offer of proof. (204 So.2d at 848).
Noteworthy here is the fact that the record is devoid of any indication that the trial court refused an opportunity to counsel to state or summarize what he desired to prove by any witness, document, or otherwise. Upon such a posture of the record where no prior effort was made by interviewing the supervisors or anyone else as to *496 the racial composition of the voters list, and without any evidence of percentages of the racial makeup of the county population, we cannot say the trial judge erred.

III.
Appellant argues that he was denied due process of law when the court over-ruled his motion to suppress evidence and refused to consider the evidence he offered in support thereof. Appellee argues that in the appellant's attack against the state's evidence on his motion to suppress, the appellant did not show that either Officer Hines or Officer Brown actually arrested him. Appellee further contends that having failed to prove that they arrested him, appellant did not shift to the state the burden of showing that he was legally arrested. Butler v. State, 212 So.2d 573 (1968). However, regardless of the merits of appellee's argument on that proposition, when the record of trial in chief is carefully examined, it is clear that when Officers Hines and Brown followed the appellant after observing him driving in a reckless manner, Officer Hines was legally authorized to arrest appellant. Having seen appellant commit the misdemeanor of reckless driving, a violation of Mississippi Code Annotated § 63-3-1201 (1972), Policeman Hines had authority to make a warrantless arrest of appellant. Miss. Code Ann. § 99-3-7 (1972).
In this connection, appellant takes the position that the policemen pursued him on account of a report made to them by one Dickson to the effect that earlier in the day at his place of employment, appellant had drawn a pistol on another individual. Appellant requested and was granted an instruction authorizing the jury to acquit him if "the jury believed ... Officers Hines and Brown were pursuing defendant to arrest him on a charge of assaulting one James Bibbers not occurring in their presence." The jury found against appellant on the issue of whether the officers pursued him on the basis of the oral report of appellant's earlier action, or as a result of what they saw him do, and the court is bound by the jury findings upon an issue presented by the instruction requested by appellant. In support of his argument appellant relies on Pollard v. State, 233 So.2d 792 (Miss. 1970), but that case is factually distinguishable from the present case and is not controlling. In Pollard, the arresting officer did not see the defendant commit any offense at all before the pursuit, but here the testimony is clear that the officers observed him driving in a reckless manner at which time it became not only their right but their duty to pursue him in an effort to take him into custody. Officer Hines' testimony that he observed appellant driving recklessly was corroborated by the testimony of Officer Brown.
At the hearing of his motion to suppress evidence, the appellant offered testimony from a number of witnesses which was rejected by the trial court upon objections by the state. Most of the evidence rejected was based upon hearsay, and in view of the testimony of Officers Hines and Brown, who at the trial in chief made it clear that they pursued the appellant because of what they observed him do in their presence, our judgment is that there was no reversible error committed by the trial court with reference to appellant's motion to suppress evidence. Even if it were conceded that the court erred in dealing with the motion, we find no reversible error in that aspect of the case because at the trial in chief the evidence which went to the jury was competent and admissible.

IV.
Lastly, appellant argues that the guilty verdict returned against him was against the overwhelming weight of the evidence and resulted from bias and prejudice. There is no merit in this argument because the record clearly shows that all the essential elements of the indictment against appellant were adequately proven by competent evidence. The indictment almost tracks Mississippi Code Annotated § 97-3-7(2) (Supp. 1975). Officers Hines and Brown would have been derelict in *497 their duty had they not pursued the appellant. Their identity should have been clear to the appellant because they were in a marked police car with its blue lights on top and shining. Yet, when Hines (dressed in police uniform) finally overtook the appellant and asked for his driver's license, the appellant shot Hines and continued shooting him after he was knocked down by the first bullet. Though he testified that one Dickson did make an oral complaint to him, Hines was positive in stating that his pursuit of appellant was not based on what was told him by Dickson. The jury heard the case on conflicting evidence and its verdict was amply supported by competent evidence even though there were slight inconsistencies in the testimonies of Hines and Brown. Such inconsistencies are neither unusual nor grounds for the jury to reject all of their testimony.
Having carefully considered the entire record and every legal proposition raised by appellant, we find no reversible error. Refusal of the trial court to allow each member of the board of supervisors to testify cannot be a ground for a new trial absent any indication or statement as to what their testimony would prove. By seeking to have these witnesses testify, appellant was attempting a fishing expedition; this is especially true here where appellant admittedly had made no attempt before trial to question these witnesses as to any aspect of the case. Evidence of the guilt of appellant cannot logically be considered as insufficient to raise a jury issue.
AFFIRMED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and LEE, JJ., concur.