## George DAVIS *v.* STATE of Arkansas

CR 75-173                                    533 S.W. 2d 202

### Opinion delivered March 1, 1976

*Jones & Tiller*, by: *Delector Tiller*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *B. J. Walker*, Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Appellant George Davis was found guilty of murder in the second degree and sentenced to 15 years in the Department of Correction. For reversal he contends:

"I.   Under the circumstances that developed at the time of trial, it was impossible for defendant to get a fair trial.

II.   The Court erred in sustaining the State's objection to the defendant's effort to inform the jury as to the conversation between himself and Charlie Bailey and as to a conversation defendant had with his Aunt Gloria Dean Dodson.

III. The Court erred in overruling the defense objection to the line of argument pursued by the prosecution in its closing argument.

IV. The verdict is contrary to the law and the evidence.

V. The Court erred in refusing to give the jury defendant's instruction labeled No. 2 over defendant's objections.

VI. The Court erred in overruling defendant's motions for a directed verdict."

The record shows that appellant shot one Charlie Bailey at a party in a neighbor's house. The bullet entered the decedent's body just under the right shoulder blade. Appellant relied upon self defense and sought to show that in the afternoon before the shooting his Aunt Gloria told him that the decedent had threatened him. The trial court sustained an objection on the basis that such testimony was hearsay. There is testimony from other witnesses that the decedent had threatened to kill appellant one or two times shortly before the shooting. It is fairly well conceded by all witnesses that the decedent had been removed from the party at least once before the shooting.

We find no merit in appellant's contentions I, III, IV, V and VI. The testimony was certainly sufficient to go to the jury on second degree murder. However, we find that prejudicial error was committed when the trial court ruled that appellant could not testify about the threat communicated to him by Aunt Gloria. In *Decker* v. *State,* 234 Ark. 518, 353 S.W. 2d 168 (1962), we stated:

". . . Of course, it is well settled that a communicated threat by the victim against the accused is admissible to explain the conduct, or show motive of the accused, when self defense is relied upon, or an overt demonstration of violence on the part of the victim is present. *Lee* v. *State,* 72 Ark. 436, 8 S.W. 385."

In *McCormick on Evidence* § 295 (2d ed. 1972) the author states:

> "Homicide and assault cases present another special problem. If the accused claims self defense, and threats of the victim were known to the accused, these threats are admissible to prove the accused's apprehension of danger and its reasonableness. . . ."

In 1 *Wharton's Criminal Evidence* § 225 (13th ed. 1972) the author states:

> "It is relevant for the accused himself to testify directly as to his apprehension of imminent danger and his reasons therefor, and he may state what he believed the deceased intended to do in the encounter. In support of the accused's claim of apprehension, it may be shown that the deceased had previously threatened the accused."

The author in 2 *Wigmore on Evidence* § 247 (3rd ed. 1940) states:

> "On the same principle as that of the preceding section, *threats of violence* against the defendant, uttered by the deceased, and brought to the knowledge of the defendant, are relevant to show his belief of impending danger from the deceased. The state of the law in the several jurisdictions varies only in the phrasing of the generally accepted conditions of admissibility.
>
> (a) As in the preceding topic, considerations of policy call for some *restrictions* calculated to secure the 'bona fide' use of such evidence. These may be, and frequently are, the same as those applied (in the preceding topic) to the use of the deceased's character. But they are less frequently laid down for the present class of evidence, apparently for two reasons, — first, because there is less danger of improperly using the deceased's threats in justification for the killing (less danger, that is, than where he can be shown to be an abandoned ruffian, a curse to the community), and,

secondly, because specific threats of violence have a more decided bearing on the probability of aggression than mere dangerousness of character. It is therefore to be noted that the rulings on the two subjects in a given jurisdiction are not necessarily mutually applicable.

(b) Wherever the *overt-act* limitation is adopted, the rule should prevail (as in the preceeding topic) that the trial Court's discretion determines the sufficiency of the evidence of an overt act.

(c) The threats are required to have been *communicated* to the defendant, *i.e.* brought to his notice in some way; otherwise they have no bearing for the present purpose.

(d) The use of *uncommunicated threats*, as showing the probability of the deceased having been the aggressor, involves a different principle (dealt with *ante*, § 110); but the respective precedents are not always duly discriminated.

(e) The *actual making* of the threats is immaterial, if there was a communication made to the defendant of supposed threats. This illustrates the contrast of principle with the doctrine of uncommunicated threats (*ante*, § 110)."

From the foregoing authorities, we find that the accused is entitled to testify as to his apprehensions and that for that purpose his testimony, as to threats of the decedent communicated to him by third persons, does not constitute hearsay. It matters not whether the communications were truthful or untruthful but only that the third person made the communication to the accused and that he had a right to rely upon the communications to make him apprehensive of the decedent's subsequent conduct.

Reversed and remanded.