345 So.2d 1048 (1977)
Clarence HARLEY
v.
STATE of Mississippi.
No. 49565.
Supreme Court of Mississippi.
May 11, 1977.
H. Clark Coleman, Jr., West Point, John P. Fox, Houston, for appellant.
A.F. Summer, Atty. Gen. by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, ROBERTSON and LEE, JJ.
ROBERTSON, Justice, for the Court:
Clarence Harley was indicted by the grand jury of the Circuit Court of the First *1049 Judicial District of Chickasaw County, for the murder of Emmett Kirby, Jr. He was convicted of manslaughter and sentenced to serve a term of eighteen years in the state penitentiary with six years being suspended.
There were six assignments of error but we will discuss only two. We think there is merit in those two and are of the opinion that the conviction and sentence should be reversed and this case remanded for a new trial.
The two assignments of error, which we are sustaining, contend:
The trial court erred in refusing to permit the appellant to present to the jury certain threats made by the deceased against the life of the appellant which were communicated to the appellant by third parties.
In a murder trial wherein a principal issue was appellant's state of mind upon confrontation by deceased and the reasonableness and apparent necessity of appellant's actions, the trial court erred in excluding, as hearsay, prior death threats by deceased against appellant communicated to appellant by third parties.
The victim of the fatal shooting, Emmett Kirby, Jr., was the brother of appellant's wife, Ladester Kirby Harley. There was bad blood between Harley and his brother-in-law, Kirby, extending back into 1974. The appellant was allowed to testify of threats on his life made directly to him by his brother-in-law, Emmett Kirby, Jr.; he was also allowed to testify of threats against him made by his (appellant's) wife and threats made directly to him by his stepson.
Appellant was not allowed to testify of threats by the deceased which were communicated to Harley by his wife and stepson. Harley attempted to testify of these threats to show his state of mind on November 7, 1975, the day of the fatal shooting.
On Wednesday, two days before the fatal encounter on Friday, appellant had a run-in with his 16-year-old stepson Wendell Cousin, who lived in his home. This testimony was offered out of the presence of the jury:
"A Wendell Cousin. He throwed a .25 automatic on me also on that Wednesday morning, and that's when the last remarks were made about her brother killing me, and that was on Wednesday. And that's when I went and purchased that gun Wednesday evening when I got off from work, when the remarks were made that morning about her brother killing me.
"Q Tell specifically what was said there about him killing you.
"A When her son had that pistol and was trying to get to me. He was in the living room and I was in the kitchen, and he was trying to get to me with that gun and was begging his mother to let him kill me. His mother, she was fighting with him to keep him from killing me because she didn't want her son involved. She was fighting with him  well, not fighting. She was scuffling him, trying to keep him out of the room where I was, and he had a .25 automatic, trying to get to me. And so that was the last words. She said, `No, don't kill him.' Said, `Emmett, Jr.'s going to kill him.' That was on Wednesday morning after Halloween night.
"Q Now that was two days before this incident?
"A That's right, and this trouble took place that Friday.
"Q Tell the Court what your state of mind was after getting reports of these threats.
"A I was real afraid for my life because it was more than one was threatening my life. Along with Emmett, Jr. was my wife and stepson, which was three of them right there involved in it, so that's what I was so afraid of. More than one was threatening my life, so that was enough to scare anybody and make me afraid."
.....
"THE COURT: Mr. Fox, the objection is sustained. It is hearsay evidence and is not competent.

*1050 "MR. FOX: As to the step-child as well as the younger child?
"THE COURT: And as to what the wife said."
It was fatal error to exclude this testimony because it was offered not for the truthfulness of the threats but merely to show the apprehensive state of mind of the defendant at the time of the fatal encounter.
The Supreme Court of Arkansas considered this type of testimony in Davis v. State, 533 S.W.2d 202 (Ark. 1976). Davis was convicted of murder in the second degree and sentenced to 15 years in the Department of Correction. At his trial, he asserted self-defense and attempted to show that on the afternoon before the shooting his Aunt Gloria had told him that the deceased had threatened him. In finding that prejudicial error was committed when the trial court ruled out this testimony, the Supreme Court of Arkansas said:
"The author in 2 Wigmore on Evidence § 247 (3rd ed. 1940) states:
.....
"`(e) The actual making of the threats is immaterial, if there was a communication made to the defendant of supposed threats. This illustrates the contrast of principle with the doctrine of uncommunicated threats (ante, § 110).'
"From the foregoing authorities, we find that the accused is entitled to testify as to his apprehensions and that for that purpose his testimony, as to threats of the decedent communicated to him by third persons, does not constitute hearsay. It matters not whether the communications were truthful or untruthful but only that the third person made the communication to the accused and that he had a right to rely upon the communications to make him apprehensive of the decedent's subsequent conduct." 533 S.W.2d 203-04.
(Emphasis added).
Because of this fatal error, the judgment of the lower court is reversed and this cause remanded for a new trial.
REVERSED AND REMANDED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.