443 So.2d 16 (1983)
Annie Lee BELL
v.
STATE of Mississippi.
No. 54443.
Supreme Court of Mississippi.
December 7, 1983.
Rehearing Denied January 18, 1984.
*17 Carver A. Randle, Indianola, James D. Minor, University, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BROOM, Presiding Justice, for the Court:
Murder is the crime for which the defendant, Annie Lee Bell, was convicted in the Circuit Court of Humphreys County, Mississippi, and sentenced to life in custody of the Mississippi Department of Corrections, the Honorable Gray Evans, circuit judge, presiding. On appeal she argues that the evidence was insufficient. She also contends that the trial court erred in its refusal to permit introduction of evidence of the deceased's character; to permit testimony regarding the events which occurred the night before the murder; to apply the Weathersby rule; and in allowing the sheriff to testify after he heard testimony in the court room following invocation of the rule. Another contention is that she was given incomplete warnings of her rights. We affirm.
The evidence shows that in the morning of April 28, 1982, defendant, Annie Lee Bell, shot her boy friend, Henry Brown (referred to by her as "Sweet"), to death just outside her mobile home where they had been living together. She stated that in the episode preceding the killing Brown hit her, threatened her life, and chased her outside where she shot him at the bottom of the steps as he advanced toward her and was "... two or three hands reaching distance" of her. She shot him with her .25 automatic pistol which she removed from her purse, fired twice, missing him the first time and then hitting him in the right breast with the second shot which was fatal. She testified that after she shot Brown, he went back up the steps and fell in the doorway, where blood was found on the carpet underneath his body. No weapon was found on or near Brown's body, and no contention is made that any such weapon was removed from about his person. Within a short time she was examined by a doctor who stated that she had some bruises and marks about her body, which resulted from trauma  he said the trauma could have been caused by a fall or her being struck.[1]
Her version of self-defense was substantially contradicted by three Humphreys County law enforcement officials who stated that just after the shooting, defendant Bell told them that she fired the fatal shot from an adjacent lot at a time when her boy friend was at the bottom of the steps. *18 Deputy sheriff Holloway measured about 19 steps (nearly 60 feet) from where she indicated she was situated and where Brown was situated when she shot Brown.
Bell also stated that the night before the fatal incident she and Brown had had a disagreement and she had put him out of the trailer, but that he had returned and persuaded her to let him spend the night upon his agreement to leave the next day. In her testimony it was her contention that previous altercations had occurred, and that he had previously threatened her on Tuesday before the killing on Wednesday, which she said was in self-defense.
First argument made is that the evidence was insufficient. She asserts that the record contains "no direct evidence or motive to indicate murder ...". This argument is without merit in view of the testimony of witness Hutchins. According to him, he was nearby when the shooting occurred and heard her call him "a Son of a Bitch or something, you know, said she would kill him and a couple of shots went off, you know."
Then she argues that "the verdict was against the weight of the evidence". Three of the law enforcement officials including sheriff Jones testified that shortly after the killing, defendant Bell told them that she shot from an adjacent lot, which the officers measured and found to be some 19 steps away from where Brown was situated. Deputy Holloway testified that his steps were approximately 3 feet. We find no merit as to the argument on the sufficiency of evidence.
Next argument (designated POINT III in "Brief of Appellant") is that the trial court erred "in refusing to permit the character of the deceased for peace or violence to be made known to the jury."[2] In this connection it is to be noted that not even one witness was asked if he knew Brown's reputation for peace or violence. No one was asked about his "character". In actuality, no testimony was excluded as to Brown's reputation for peace and violence. Examination of the assignment of errors reveals that reputation of Brown (victim of the murder) is not mentioned  his "character" is mentioned in this POINT III. In her "Brief of the Appellant"[3] she discusses the "character or reputation" of Brown as if the two words are synonymous, although we all know that "character" means what a person in reality is, whereas "reputation" is what others think of the person. In her "Rebuttal Brief"[4] defendant restates her POINT III using the words "character of the deceased" but makes no argument whatever under POINT III. Then under her POINT IV dealing with "res gestae" as to "events of the night before the homicide" she deals with "character of the deceased" in one sentence.[5] Subsequently, near the bottom of the same page, she switches her argument from "character" to "reputation" though neither assignment of error deals with "reputation". Not having made any assignment of error on "reputation", she now should not be heard to make such an argument or rely on cases wherein "reputation" of the deceased was at issue. Our Rule 6 of the Supreme Court of Mississippi clearly says that an "error not distinctly assigned shall not be argued by counsel... ." Of course, we may notice "plain error" in order to prevent a manifest miscarriage of justice.
Our perusal of the record, as pointed out by the state, shows that in her testimony she (before specific objection was made by the prosecution) extensively detailed in the jury's presence the alleged (which the jury rejected) antecedent acts of violence between her and victim Brown. She told about how he had broken into her house on Tuesday evening about dark before the killing on the next day. She told about how on Monday he had beaten her up and she had told him to "get out of my house".
*19 She related how he left and came back and threatened to kill her, after which she ran out into the yard where he caught up with her, choked her, and beat her head against the ground. Further she described how then inside the house he threatened to kill her again, after which she agreed to let him spend the night there. It is true that the judge excluded testimony of the defendant's sister which was offered "for the purpose of corroborating her testimony regarding the fact that she did call her sister that night and explained to her sister that she had been beaten and was crying on the phone."[6] Also complaint is made[7] by defense counsel that he
... was attempting to show through my questioning of the Sheriff, or the Deputy, that he in fact knew of this man and knew of his having attacked this lady before  she had filed a complaint against him  and to show the history of his violent involvement with her. It was my understanding from reading the law that that was inadmissible [sic].
The foregoing statement of defense counsel hardly qualifies as a profert of testimony concerning Brown's reputation for peace or violence, if it were intended as such. It is devoid of any statement as to how the sheriff or deputy knew the deceased Brown had attacked the defendant except "she had filed a complaint against him". There is no statement as to where such attack occurred or whether any such attack was recent in time, long ago, or when. Defense counsel's statement to the trial judge that counsel wanted through questioning the "Sheriff, or the Deputy, ... to show the history of his [Brown's] violent involvement with her.", does not qualify as an acceptable profert regarding Brown's reputation. This is so because the trial court could not have committed reversible error by not, upon such a general profert, allowing either law officer to show "the history" of (not reputation of Brown) violence between Brown, the deceased, and defendant Bell.
Argument is asserted that "the present case should be controlled" by Jackson v. State, 426 So.2d 405 (Miss. 1983). There Justice Bowling discussed records of Justice Court Judges regarding "convictions as a result of complaints made" by the defendant. The present case is distinguishable because here no such convictions were offered or stated by counsel or the defendant to have occurred in any prior proceedings. Jackson stated the views of this Court that "much flexibility should have been given appellant in presenting prior harassments, threats and assaults directed toward her." In the present case, the record contains page after page[8] of testimony given by the defendant whereby she, in great detail, related to the jurors prior harassments, threats and assaults made against her by her boy friend "Sweet" Brown whom she admittedly shot.
Freeman v. State, 204 So.2d 842 (Miss. 1967) is instructive on what is an adequate profert. There the witness was asked about the deceased's "reputation for peace and violence". District Attorney Finch objected and was sustained by Trial Judge, the Honorable Stanton Hall. Defense counsel Rex Jones then stated:
If the Court please, let the record show that if this last witness had been allowed to testify that I would have proved the general reputation of the deceased for peace and violence in the community in which he lived.
Our opinion states:
It will be noted that the jury was excluded at the conclusion of the prefatory questions, whereupon the witness was *20 asked by his attorney "Did you know his reputation for peace and violence?" This, of course, does not refer to his general reputation in the community which we have many times held to be essential in determining a trait or characteristic of a person. The proffer made by the defendant, however, correctly states the rule, as the defendant's attorney stated that if permitted by the court, he would prove the general reputation of the deceased for peace or violence in the community in which he lived. (Emphasis added).
204 So.2d at 847.
As set forth in the opinion authored by Patterson, J. (now Chief Justice), after trial judge Hall sustained the prosecution's objection to the deficient question, then defense counsel caused "the record to show" that had the witness been allowed to testify, he would have "proved the general reputation of the deceased for peace and violence in the community in which he lived". In the present case, after the court sustained the prosecution's objection to the question at issue, no profert was made which comes close to Freeman's requirements. Here counsel did not cause the record to specifically show what he intended to prove by "the sheriff or deputy". He made no mention whatever of the phrase "peace and violence", "in the community in which he lived", and failed to mention either "character" or "reputation". At most he mentioned that a witness "knew of this man and knew of his having attacked this lady" based upon her having "filed a complaint against him  and to show the history ". Accordingly, the present argument cannot rest upon "reputation" or "character" of deceased Brown. Since Freeman, in Kinney v. State, 336 So.2d 493 (Miss. 1976), and Martin v. Wadlington, 337 So.2d 706 (Miss. 1976), we have held in accord with Freeman that counsel, when not permitted to present a witness's testimony, must by some manner or means cause the record to show precisely what he intended to prove by the witness. According to 53 Am.Jur. Trial, § 102 (1945), the profert must be full and specific. Similar ruling was made in McGee v. State, 365 So.2d 302 (Miss. 1978), authored by Roy Noble Lee, J., who noted "no proffer was made of the testimony nor was a statement dictated into the record to indicate what was proposed to be shown ...". Priest v. State, 275 So.2d 79 (Miss. 1973), stated in the words of Walker, J. (now Presiding Justice):
If a trial judge refuses to allow a witness to take the stand, then counsel offering the witness must take the initiative and offer to dictate into the record a detailed statement of the relevant and material facts about which the witness would testify. If that offer is refused by the court, then counsel should see that the offer itself is recorded by the court reporter.
275 So.2d at 82.
The trial judge allowed the defendant to state that she had called her sister the night before, but excluded the details of what she told her sister.
We note the defendant's testimony (to the jury) that the night before she killed Brown, after the alleged mistreatment of her by him, they slept in different rooms of her residence. She stated further that the next morning she awaked to receive her sister's baby which defendant cared for during the day, but Brown was still asleep when she (defendant) waked up. Then she even went back to sleep. Their sleeping under such circumstances clearly negates any rational contention that throughout the night there was any continuous episode or on-going violent event by Brown. Other testimony was that during the hours preceding his death, the deceased Brown left the defendant's residence (trailer) and visited next door.
If it be assumed arguendo that the lower court erred in restricting the testimony as stated above, the error, if any, is harmless because the defendant herself gave detailed testimony as to the substance of that alleged mistreatment of her by "Sweet" Brown. She extensively testified in great detail as to threats and beatings *21 administered by her boy friend Brown prior to the actual killing. Her briefs fail to point out any testimony of prior acts of violence or harassment of her by Brown which the trial judge excluded. Upon this record, there is no reversible error in this regard. Dase v. State, 356 So.2d 1179, 1182 (Miss. 1978).
Next argument advanced is the refusal of the lower court to apply the rule of Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933). We find the Weathersby rule is inapplicable here because the testimony of the defendant given at trial was substantially contradicted by pre-trial statements she made to the investigative officers which the jury accepted as true. For instance, she told them that she shot Brown from an adjacent lot but at trial she testified that she shot him at close range: some "two or three hands reaching distance" away. (There were other inconsistencies in her testimony not necessary to be detailed here)[9] Thus we find that the lower court was correct in not applying the Weathersby rule.
Another argument is that the trial court erred in permitting the sheriff to testify in rebuttal after the rule of "sequestration of witnesses had been invoked". In this jurisdiction the prevailing rule is that whether a witness, particularly a law officer, may testify after remaining in the courtroom following invocation of the rule, is within the sound discretion of the trial judge. Under a long line of cases previously decided by us, this argument does not warrant reversal. Ethridge v. State, 418 So.2d 798, 800 (Miss. 1982). In good practice, a circuit judge may properly exclude an officer from sitting in the court room and hearing the testimony, and then testifying where his presence in the court room is not needed  if another officer is available to keep security etc. in the court room.
Last argument made is that Bell (page 18, her brief) "was given incomplete warnings of constitutional rights after her arrest". She states that she "should have been informed that even though she had initially volunteered statements, she could cease talking with police at any time." In the Interest of Wilder, 347 So.2d 520, 521 (Miss. 1977), states our rule that "An individual has a right to stop the interrogation at any time he wishes, but it is not required that he must be so informed." (Emphasis added).
Review of the record shows that the lower court liberally allowed the defendant to present her theory of self defense, including detailed prior acts of mistreatment which she alleged Brown committed against her. No reversible error is shown, and affirmance is required. She perhaps, as is usually the case, did not receive a perfect trial, but did receive a fair trial. The jury instructions presented clearly the defendant's theory of self-defense and presumption of innocence.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE and HAWKINS, JJ., concur.
DAN M. LEE, BOWLING, PRATHER and ROBERTSON, JJ., dissent.
DAN M. LEE, Justice, dissenting:
Just as no rational mind would condone killing as a means of settling disputes, a killing done in self-defense does not give rise to condemnation. Unfortunately the task of determining whether a killing is in self-defense is sometimes a difficult one. The jury must have the opportunity to hear all of the relevant facts before reaching their verdict. In this case, as in any case where the defense is presented almost exclusively through the defendant's testimony, great latitude must be given to a corroborating witness. Because I believe that the defense was stifled in its efforts to corroborate Ms. Bell's testimony, I respectfully dissent.
There is a tragic sadness when a loving relationship becomes a war which turns the home into a battlefield and the lovers into *22 warriors and victims. Annie Lee Bell is not before this Court because of a sudden violent act committed in the heat of passion or because she coldly and calculatedly laid a trap for her victim. According to her story when she fired the shots that killed Henry "Sweet" Brown she ended a war between them. It therefore was essential to her defense that she be allowed to show the history of violence and abuse which the deceased had caused to be a part of her life. The majority argues that she was given an adequate opportunity to make this showing through her own testimony. The fallacy of that argument is that it assumes that the defendant's testimony alone, without corroboration, is sufficient.
Although we make most gallant and noble efforts to see that a defendant is given the presumption of innocence and afforded a trial free from passion or prejudice, we must recognize that these efforts do not always succeed. In a trial of this nature a certain amount of passion on the part of the jurors is the inevitable consequence of confronting the killing of a human being. Also, we must realize that the testimony of the defendant in such a trial will generally be viewed with great suspicion. It is for these reasons that it is so important that we allow the defense an ample opportunity to put on corroborating testimony.
In the instant case Ms. Bell attempted to corroborate her story through the testimony of Officer Holloway and Josephine Bell. Through Officer Holloway she attempted to corroborate her story of repeated abuse and violence. The majority has written that this was an attempt to prove the deceased's character. If this was so it was clearly admissible under Shinall v. State, 199 So.2d 251 (Miss. 1967), which held that the character of an accused is admissible where it is doubtful as to who the aggressor was at the time of the homicide or where the immediate circumstances of the killing render it doubtful as to whether or not the act was justifiable.
There is a far better reason that the corroborating testimony of Officer Holloway and Josephine Bell should have been admitted. Not to prove the deceased's character, but to show Annie Lee Bell's state of mind when she fired the fatal shot. Indeed, the testimony she attempted to elicit from her sister was that she had called the night before in a fearful voice and asked her sister to call the sheriff. She attempted to have Officer Holloway testify that she had previously filed a complaint against the deceased for physically abusing her. The history of brutal and violent behavior suffered by Ms. Bell is highly relevant to her claim that she feared for her life. In Lee v. State, 160 Miss. 618, 134 So. 185 (1931), we wrote:
We think also the condition of the appellant's mind, at the time of the fatal shooting is important in the case at bar in determining whether the killing was malicious and willful, or with malice aforethought, or whether justifiable, and, if not, justifiable, was done under a mistaken belief, honestly entertained, as bearing on the question of possible manslaughter. If the previous conduct of the deceased was, as testified to by Lee, hostile, it would constitute a situation highly prevocative in its nature, and such conduct, on repetition, was calculated to highly exasperate and inflame the mind of an ordinarily reasonable man. It is well known that there is a marked difference between the effect of an act when accompanied by previous provocation and one not so accompanied. Men, at best, are fallible and frail beings, and, where there is a persistent effort to provoke a difficulty by one person against another, the mind reacts with violence, although it is the mind of an ordinarily prudent and reasonable man. (Emphasis added).
160 Miss. at 639, 640, 134 So. at 192.
More recently, in Jackson v. State, 426 So.2d 405 (Miss. 1983), we held:
Under the undisputed evidence in this case, it is our opinion that much flexibility should have been given appellant in presenting prior harassments, threats and assaults directed toward her. Such evidence is material on the motives of *23 both appellant and deceased in presenting the incidents that occurred in front of the store. The attitude, relationship and feelings of the accused and the deceased toward each other are material. Harley v. State, 345 So.2d 1048 (Miss. 1977); Rucker v. State, 248 Miss. 65, 158 So.2d 39 (1963); Clark v. State, 123 Miss. 147, 85 So. 188 (1920); Brown v. State, 88 Miss. 166, 40 So. 737 (1906); Guice v. State, 60 Miss. 714 (1883); and Josephine v. State, 39 Miss. 613 (1861).
476 So.2d at 408.
For the reasons enumerated above, I would reverse and remand, therefore I respectfully dissent.
BOWLING, PRATHER and ROBERTSON, JJ., join in this dissent.
NOTES
[1] On page eight (8) of her Rebuttal Brief, she concedes that Brown was "unarmed".
[2] See page 11, Appellant's Brief.
[3] See page 12, Appellant's Brief.
[4] See page 6, her Rebuttal Brief.
[5] See pages 12-13, Appellant's Brief.
[6] Nowhere in her assignments of error or in her briefs does she specifically argue that her sister's testimony was erroneously excluded. Nowhere in either of her briefs does she even say what her sister would have testified to. In this connection her sister, Josephine Bell, did in fact take the stand and testify that the defendant called her on the night in question crying and asking her to call the sheriff. Josephine stated she called the sheriff. See page 222 of the record.
[7] See page 96 of the record; page 11 of her brief.
[8] See pages 125-130 of the record.
[9] See pages 21-23 of Appellee's Brief.