507 So.2d 325 (1987)
Donald CANTRELL
v.
STATE of Mississippi.
No. 56491.
Supreme Court of Mississippi.
April 22, 1987.
Rehearing Denied June 3, 1987.
*326 David M. Sessums, Varner, Parker & Sessums, Vicksburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ANDERSON, JJ.
DAN M. LEE, Justice, for the Court:
Donald Cantrell, Sr. appeals his conviction of sexual battery. He was convicted in the Circuit Court of Sharkey County and sentenced to seventeen (17) years in the custody of the Mississippi Department of Corrections. He assigns seven errors in the trial court:
I. IT WAS ERROR FOR THE TRIAL JUDGE TO SIT AS SUCH IN THIS MATTER.
II. THE LOWER COURT ERRED IN ALLOWING EVIDENCE OF OTHER CRIMES AND IN OVERRULING MR. CANTRELL'S MOTION TO SUPPRESS AND EXCLUDE EVIDENCE.
III. THE LOWER COURT ERRED IN OVERRULING THE DEMURRER TO THE INDICTMENT.
IV. THE LOWER COURT ERRED IN DENYING MR. CANTRELL THE RIGHT TO ESTABLISH AND SHOW THE RELATIONSHIP BETWEEN HIMSELF AND HIS ACCUSER'S MOTHER AND OTHER RELATIONSHIPS AND IN PREVENTING MR. CANTRELL FROM SHOWING BIAS AND MOTIVE ON THE PART OF THE STATE'S WITNESSES.
V. THE LOWER COURT ERRED IN GRANTING INSTRUCTION S-3.
VI. THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND EVINCES BIAS, PASSION AND PREJUDICE ON THE PART OF THE JURY AGAINST MR. CANTRELL.
VII. SECTION 97-3-95 MISS. CODE ANN. (SUPP. 1984) WAS APPLIED EX POST FACTO.
Finding no error, we affirm.

FACTS
On a Saturday in August of 1983, Donald Cantrell, Sr., his stepdaughter, J.C., and his son, D.C., were staying in a bus converted into a trailer which was parked outside of the children's grandmother's house on Mississippi Highway 14 in Anguilla, Mississippi. Linda Cantrell, the childrens' mother and Cantrell's wife, was supposedly visiting with the childrens' grandmother.
The children both testified that on this Saturday, Donald Cantrell, Sr. and J.C. engaged in fellatio. D.C. testified that this *327 was done against J.C.'s wishes. J.C. was 11 years old.
J.C. testified at trial that on that Saturday morning Cantrell was in the trailer bathroom and called out to her to bring him some cigarettes. She said she walked into the bathroom and Cantrell "asked me to suck his penis." She testified Cantrell was sitting down on the toilet stool and had his jeans pulled down around his ankles. Cantrell had her to get down on her knees and put his penis into her mouth. Cantrell did not hold her. J.C. testified that no door or screen cordoned off the bathroom from the rest of the bus, only two cabinets and a refrigerator blocked the view.
D.C. saw this incident by looking through a crack in the cabinets. J.C. said she and Cantrell noticed D.C. peeking through the crack, and at this time Cantrell told J.C. to go back into the living room and try to explain to D.C. that he did not see what he actually saw. J.C. said she was afraid to tell anyone about the incident because she didn't want her mother and daddy to have trouble and break up. She said Cantrell told her not to tell her mom or they would break up.
D.C. testified that he was watching television that morning when Cantrell called J.C. into the bathroom. He said he spied on them through the crack and heard J.C. twice say that she didn't want to do it. He corroborated J.C.'s testimony that she was down on her knees while Cantrell sat on the toilet with his pants pulled down. D.C. did see J.C. "suck his, ah, you know what," then J.C. and Cantrell saw him, and Cantrell told J.C. to go on out and act like nothing happened.
The incident did not come to light until several months later, after Cantrell and his wife, Linda had separated. D.C. told his mother about the incident because at that time he was angry with his father.
After D.C. told his mother about the incident she went to J.C., who confirmed the story. Linda Cantrell then took J.C. to a public welfare officer to report the incident. The report was made while Cantrell and his wife were separated and at a time when the parents were involved in a custody and visitation dispute.
Cantrell was indicted in the November, 1984 term of the Sharkey County grand jury for the crime of sexual battery. Trial was held December 5, 1984. Both children testified at trial as stated above and they both said that their mother had not put words in their mouths.
Cantrell took the stand in his own defense and testified that the children were liars, and that it would not be unusual for them to concoct the same story and tell it in unison. Cantrell said he believed Linda Cantrell put the children up to telling this story and Linda came up with this story to prevent visitation, Cantrell said. Cantrell also introduced several character witnesses who testified that they knew Cantrell's reputation for being a good, loving father.

LAW

I.
Was it Error For the Trial Court to Sit in This Cause?
Cantrell here argues that he is entitled to a new trial based on the trial judge's prior dealings with the defendant.
After the verdict was rendered, but before sentencing, counsel for Cantrell learned through an attorney who previously represented Cantrell that Rush M. Clements, the Circuit Court Judge at trial, had signed an affidavit charging Cantrell with removing a pickup truck from the state with the intent to defraud a lien holder in April, 1981.
The trial judge held a post trial evidentiary hearing to ascertain the facts behind Cantrell's claim in support of his motion for a new trial.
The lienholder was the Bank of Anguilla, who was represented by the law firm of Clements & Clements, a firm comprised of Rush M. Clements and his father at the time Clements signed the affidavit.
Robert Evans, a Greenville attorney who represented Cantrell in the prior charge, testified that he did not think the charge was warranted and that he contemplated a civil suit for malicious prosecution. However, none was ever filed.
*328 Clements agreed to drop the charges against Cantrell in exchange for a personal release from liability signed by Cantrell, Evans testified. Clements executed the release, but Evans never returned it to Clements on behalf of Cantrell. In any event, the charges were never pursued, though Evans was uncertain whether they were dropped or just ignored.
It was clear that Clements and Cantrell never met face to face, though Cantrell knew Clements as county attorney because he was Chief of Police in the City of Anguilla at one time. The affidavit states that Clements swore out the charge as county attorney based "on information."
Counsel for Cantrell learned of the previous charge on December 6, 1984, the day after trial. Cantrell had never told his counsel about the previous charge, and counsel learned of it only through attorney Evans.
There was no implication that the trial judge had any recollection of the earlier charge and it was not brought to the court's attention until December 28, 1984, the sentencing day, three weeks after counsel learned of the earlier charge.
The trial judge denied the motion for a new trial, stating that he felt he was "sandbagged" to a certain extent; he also found the proof at trial and at the hearing on Cantrell's motion did not require a new trial. The trial court stated:
Because the Court, having searched its mind, feels like that it had no knowledge of any prior matters, and does not feel like that any of these matters play any role whatsoever in this trial at hand, because of the impossibility it places the Court in, to have even called another Judge in to rule on whether or not a new trial should be granted from any other court who never had known what the proof shows, because the evidence here this morning has shown no bias or prejudice exhibited in the trial of this case whatsoever, the motion for a new trial will be overruled.
We agree with the trial court that on these grounds a new trial was not warranted.
In Rutland v. Pridgen, 493 So.2d 952 (Miss. 1986) we stated our established rule.
In Ruffin v. State, 481 So.2d 312 (Miss. 1985), we said, "When a judge is not disqualified under § 165 of the Mississippi Constitution, or § 9-1-11, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion." Id. at 317. See also Coleman v. State, 378 So.2d 640 (Miss. 1979).
However, in addition to relying on this established precedent, this Court in Rutland also looked to the Canon 3 C.(1) of the Code of Judicial Conduct and analogous federal interpretation of when a judge should recuse himself to help establish a second standard. The Court went on:
However, [federal interpretation] does give a workable test to determine when a judge should disqualify himself under this provision: A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. We adopt this objective test.
493 So.2d at 954.
Under either test we do not think the facts warrant a new trial. We do not find an abuse of discretion and as it is generally held, "a judge is not disqualified to sit at the trial of one accused of crime merely because previously thereto he has participated in other legal proceedings against the same person." Adams v. State, 220 Miss. 812, 72 So.2d 211, 214 (1954) (citing 30 Am.Jur. Judges § 82). See also, Annot. 16 A.L.R.4th 550 § 7 565-68 (1982).
On these facts, we find no error in Judge Clements sitting in review of Cantrell's motion for a new trial for the reasons stated above.

II.

Did the Lower Court Err in Allowing Evidence of Other Sexual Acts?
This question has been decided adversely to Cantrell in Coates v. State, 495 So.2d *329 464, 468 (Miss. 1986). This assignment of error is denied.

III.

Did the Lower Court Err in Overruling Defendant's Demurrer to the Indictment?
Here Cantrell argues that the indictment is defective in that it did not furnish a description of the charges sufficient to allow him to adequately prepare a defense. Brief of Appellant at 6.
The indictment reads:
[T]hat Don Cantrell, a male person over 18 years . .. on or about August ..., 1983 ... with force and arms, in the County aforesaid ... did ... did wilfully, unlawfully, feloniously and intentionally commit the felony of sexual battery by engaging in sexual penetration with J.C. by engaging in fellatio with J.C., she at the time of such act being a female child under the age of 12 years. The exact date in August, 1983 being unknown to the Grand Jurors.
However, with the exception of the reference to Cantrell being beyond the age of 18, the indictment tracks the language of Miss. Code Ann. § 97-3-95 and § 97-3-97(a) (Supp. 1986). Those provisions state:
§ 97-3-95
A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent;
(b) A mentally defective, mentally incapacitated or physically helpless person; or
(c) A child under the age of twelve (12) years.

§ 97-3-97(a)
(a) "Sexual penetration" includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body.
[emphasis added]
A provision concerning sexual penetration of a child under the age of 12 was recently found constitutional in the face of a vagueness challenge. Robertson v. State, 501 So.2d 398 (Miss. 1987).[1]
The rule in this state is that an indictment which tracks the statutory language is generally sufficient to inform the accused of the charge against him. See Ward v. State, 479 So.2d 713, 715 (Miss. 1985); Hickombottom v. State, 409 So.2d 1337 (Miss. 1982); Anthony v. State, 349 So.2d 1066 (Miss. 1977); State v. Labella, 232 So.2d 354 (Miss. 1970). We found an arguably more vague sexual battery indictment to be sufficient in Hines v. State, 472 So.2d 386, 390 (Miss. 1985).
We think Cantrell attempts to find ambiguity where none exists. The lone reference to Cantrell being beyond the age of 18 is not fatal. See Rule 2.05 Uniform Criminal Rules of Circuit Court Practice. This assignment is without merit.

IV.

Did the Lower Court Err in Limiting Evidence of Family Relationships and Cantrell's Attempts to Show Bias and Motive on the Part of the Prosecutrix?
Here Cantrell lumps together several allegedly erroneous evidentiary rulings which he contends mandates reversal. The rulings of which Cantrell complains all center around Cantrell's attempts to establish, 1) that Cantrell's estranged wife prompted his children, whom he also sought to establish were pathological liars, to testify falsely and 2) that he was of good character.
Cantrell cites Sanders v. State, 352 So.2d 822 (Miss. 1977) where it is said that "wide latitude is to be allowed on cross-examination to show bias or motive for the purpose of effecting credibility." Id. at 824. However, the Court in Sanders also noted that *330 the extent of cross-examination is within the discretion of the trial judge and reversal only follows an abuse of that discretion.
The Court in Sanders found the trial court abused his discretion in denying the defendant, a former deputy sheriff, the opportunity to prove that the prosecution's chief witness had previously been arrested by the defendant.
It is true that bias, motive or interest are always material and may be proven by extrinsic evidence. See Miss. Code Ann. § 13-1-13 (1972).
Cantrell was given great latitude in cross-examining J.C. and D.C. To the extent Linda Cantrell might have prompted the children's testimony, this evidence was admissible and actually admitted. Cantrell was permitted to establish that the incident came to light only after divorce and child custody proceedings had begun. What Cantrell was not allowed to establish was the bias of Linda Cantrell, who did not testify at trial. This was proper.
As stated in Wigmore on Evidence § 949 (Chadbourn rev. 1970):
The range of external circumstances from which probable bias may be inferred is infinite... . Exact concrete rules are almost impossible to formulate and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put they not be too remote.
We think the fact that Linda Cantrell, standing alone, had extreme bias and a motive to lie is too remote to impeach the credibility of the children.
To the extent Cantrell was prohibited from eliciting testimony that he was not known to touch J.C. improperly or that he was not known to physically hug J.C. all over was outside the scope of Cantrell's general reputation in the community with respect to general character traits substantially related to the nature of the charge, and thus properly excluded. Winters v. State, 449 So.2d 766, 769 (Miss. 1984).
Finally, the trial court properly excluded testimony dealing with subjects other than J.C.'s reputation for truth and veracity. See Sheffield v. Sheffield, 405 So.2d 1314 (Miss. 1981), but compare M.R.E. 608(b), effective January 1, 1986.
In any event, at virtually every turn Cantrell failed to make a proffer of testimony on the questioned rulings therefore we cannot, in good conscience, put the trial court in error. See Bell v. State, 443 So.2d 16 (Miss. 1983); McGee v. State, 365 So.2d 302 (Miss. 1978).

V.

Did the Trial Court Err in Granting Instruction S-3?
Instruction S-3 stated:
The Court instructs the jury that if you find from the evidence beyond a reasonable doubt that in August of 1983 J.C. was a child under 12 years of age, then you should not consider "consent" or "force" to be necessary elements of the crime as charged.
At trial Cantrell objected to the instruction, counsel stating:
Defense objects to S-3 in that whether or not the District Attorney intended it to be so, the indictment clearly says, "with force," and to turn around and give the jury instructions saying, "find the man guilty as according to the indictment," and give another jury instruction that says, "force is not necessary," that's contradictory, confusing, and not proper. The indictment does clearly say "with force."
On appeal Cantrell argues that the instruction clashes with the indictment and is abstract.
We hold that the instruction properly narrowed the issue for the jury. The state was not required to prove force under Miss. Code Ann. § 97-3-95(c) (Supp. 1986) of *331 a child under 12 which clearly was the provision under which Cantrell was indicted. Thus the instruction only had the effect of eliminating the "with force" language from the jury's consideration. There was no indication in the record that the jury was given a copy of the indictment, and thus any possible confusion was eliminated.
To the extent Cantrell suggests a variance between the proof and the indictment, this argument was waived by Cantrell's failure to specifically raise this question in the trial court in a motion for a directed verdict, in a motion for a peremptory instruction or in a motion for a judgment n.o.v. Ellis v. State, 469 So.2d 1256, 1260 (Miss. 1985); Banks v. State, 394 So.2d 875, 877 (Miss. 1981). Indeed this case points out the very reason for the rule. Counsel's general objection did not point out the need for amending the indictment.
No doubt it would have been prudent to have amended the indictment when Cantrell objected to the instruction, however, any variance was either waived, as noted above, or possibly immaterial in any event. Jackson v. State, 450 So.2d 1081, 1082 (Miss. 1984), see also, Contreras v. State, 445 So.2d 543 (Miss. 1984).
Likewise, Cantrell's argument that the instruction was abstract, is waived.

VI.
Was the Jury's Verdict Against the Overwhelming Weight of the Evidence or Did it Evince Bias, Passion or Prejudice?
Our standard of review for such assigned errors is limited and well known. This assignment necessarily questions the trial court's denial of Cantrell's motion for a new trial.
This Court has said that it will not order a new trial unless to deny it would sanction an unconscionable injustice. See Russell v. State, 500 So.2d 974 (1987); Clark v. State, 503 So.2d 277 (Miss. 1987); Guilbeau v. State, 502 So.2d 639 (Miss. 1987); Temple v. State, 498 So.2d 379 (Miss. 1986).
From the facts outlined above, there is no injustice in the denial of Cantrell's motion for a new trial. There were presented factual questions and questions involving credibility of witnesses which are left to the jury to determine. Wetz v. State, 503 So.2d 803 (Miss. 1987); Brown v. State, 499 So.2d 775 (Miss. 1986); Van Buren v. State, 498 So.2d 1224 (Miss. 1986); Harveston v. State, 493 So.2d 365 (Miss. 1986); Neal v. State, 451 So.2d 743 (Miss. 1984); Groseclose v. State, 440 So.2d 297 (Miss. 1983); Gathright v. State, 380 So.2d 1276 (Miss. 1980). The trial court did not abuse his discretion here. There is no error.

VII.
Was Miss. Code Ann. § 97-3-95 Applied Ex Post Facto?
Cantrell argues that the incident giving rise to the prosecution occurred in August, 1983; therefore, Miss. Code Ann., § 97-3-95(c), under which he was prosecuted, was applied ex post facto according to this Court's notation in a footnote to Bennett v. State, 468 So.2d 855, n. 1 (Miss. 1985). There it was said that subsection (c) was not added to the sexual battery provision until 1984. Subsection (c) was added to § 97-3-95 in 1983, to be effective from and after March 29, 1983. See 1983 Miss. Laws Ch. 429. As such, it was not applied retroactively to Cantrell.
Finding no error in the judgment of the Circuit Court of Sharkey County after careful review of the record, the judgment, being a conviction of sexual battery and sentence to serve a term of seventeen (17) years in the custody of the Mississippi Department of Corrections, is hereby affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
*332 SULLIVAN, Justice, specially concurring:
I concur in everything said by Justice Dan Lee in his opinion for the court. I specifically concur with the finding under the first assigned error, that it was not error for the trial court to sit in this cause. I write only to distinguish the situation presented today from circumstances wherein justice would best be served by the trial judge's recusal.
It is true that in Rutland v. Pridgen, 493 So.2d 952 (Miss. 1986), we modified our previous rule found in Ruffin v. State, 481 So.2d 312 (Miss. 1985), to include an objective test that "a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland at 954. In my opinion no reasonable person would harbor any doubts as to this trial judge's impartiality. Here the judge was only remotely involved, several years prior, in a situation in which the charges against Cantrell were dropped. He had no recollection of the incident or Cantrell.
This situation also differs from a case which would fall under the provisions of Article VI, Section 165 of the Mississippi Constitution of 1890 and Mississippi Code Annotated, § 9-1-11 (1972). Those provisions mandate that a judge must recuse himself from a case if (1) he is "connected ... by affinity or consanguinity" to one of "the parties" or if (2) he is "interested" in the case.
Further, it should be noted that neither Cantrell nor his attorney questioned or had reason to question the trial judge's impartiality until after the verdict was rendered. The matter was not brought to the court's attention until sentencing day, three weeks after counsel learned of the earlier charge. Although this was not exceedingly remote and still within the trial judge's control, this differs greatly from a circumstance where prior to trial a party alleges that the trial judge is impartial and gives valid reasons for the allegation. Yazoo v. M.V.R. Co. v. Kirk, 102 Miss. 41, 58 So. 710 (1912).
This case is not one in which a reasonable person, knowing all the circumstances would harbor doubts about the impartiality of the trial judge. For these reasons I respectfully concur.
WALKER, C.J., HAWKINS, P.J., and ROBERTSON, J., join this opinion.
NOTES
[1] Section 97-3-95(c) was amended effective from and after July 1, 1985 to forbid sexual penetration with a child under the age of 14.