GRAVES, Presiding Justice,
dissenting:
¶ 25. I disagree with the majority’s conclusion that Abernathy failed to make a sufficient proffer concerning Dr. Katz’s testimony. Abernathy complied with the rule of evidence and the caselaw relevant to proffering evidence by adequately explaining to the trial court and into the record why Dr. Katz’s testimony was relevant. Therefore, I must dissent.
I. Abernathy complied with the rule of evidence and the caselaw relevant to proffering evidence by adequately explaining why he was offering Dr. Katz’s testimony.
¶ 26. Rule 103 of the Mississippi Rules of Evidence explains that a trial court’s exclusion of expert testimony can be found in error only if “the substance of the evidence Le.g., expert testimony] was made *327 known to the court by offer or was apparent from the context within which questions were asked.” Miss. R. Evid. 108(a)(2). See also Heidel v. State, 587 So.2d 835, 844 (Miss.1991) (“Before a party may secure appellate reversal on an evi-dentiary exclusion, that party must have placed in the record the substance of the evidence he would have offered had the court ruled otherwise”). The comment to Rule 103 explains that “when a party objects to the exclusion of evidence, he must make an offer of proof to the court, noting on the record for the benefit of the appellate court what evidence the trial judge excluded.” Miss. R. Evid. 103(a) cmt.
¶ 27. As explained in the cases regarding proffers cited by the majority, the purpose of the rule requiring the proponent of excluded evidence to “state[ ] into the record what is excepted [sic] to be proved ...” is “to enable the trial court to judge the competency of the proffered evidence and this Court can review it on appeal.” Brown v. State, 338 So.2d 1008, 1009-10 (Miss.1976). See also White v. State, 507 So.2d 98, 102 (Miss.1987) (“The rule is that ‘when a party would seek a reversal because of excluded testimony ... the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case ... ’ ”); McQuaig v. McCoy, 806 F.2d 1298, 1301 (5th Cir.1987) (“The purpose of the proffer is to make known to the court for what reasons the evidence is offered.”).
¶ 28. This Court has explained that “counsel, when not permitted to present a witness’s testimony, must by some manner or means cause the record to show precisely what he intended to prove by the witness.” Bell v. State, 443 So.2d 16, 20 (Miss.1984) (emphasis added). See also McQuaig, 806 F.2d at 1301 (“While the evidence must be offered to the court, we do not require a formal proffer; instead, the proponent of excluded evidence need only show in some fashion the substance of the proposed evidence.”) (emphasis added). In other words, the fundamental requirement of the rule is not that the proponent of the excluded testimony use the word “proffer” or any other specific language in introducing his explanation of the relevance of the testimony; rather, the fundamental requirement is that the proponent adequately explain to the court why the testimony is being offered.
¶ 29. This Court emphasized the flexibility of the rule regarding proffers in Murray v. Payne. It explained:
It is not necessary that the parties place in the record every detail of what their proof would have shown. All we require is that the party offering the excluded testimony make a clear record showing to us that there is substance to his point, that on reversal and remand there is a substantial likelihood that he will be able to offer evidence which may reasonably be expected to have an impact on the outcome of the case. We do not require that the appealing party place in the record the total and complete details of the proffered but excluded testimony. Nor do we require certainty that exclusion of that testimony affected the outcome of that first trial.
Murray v. Payne, 437 So.2d 47, 55 (Miss.1983). The Murray court held that, while the proponent of the excluded testimony did not make a formal proffer, the record was sufficient to inform the Court what the substance of the excluded testimony would be. Id.
¶ 30. In the instant case, Abernathy complied with Rule 103 and the relevant caselaw by presenting Dr. Katz to the *328 court and explaining to the court what the upshot of Dr. Katz’s testimony would be. Abernathy detailed to the court and into the record on multiple occasions why Dr. Katz’s testimony about the psychological and physiological effects of migraines was relevant and essential to his theory of defense.
¶ 31. In a pretrial motion, Abernathy’s counsel explained why he intended to call Dr. Katz as a witness:
... [T]he complainant in this cause provides numerous statements in the discovery relating to the ill-effects she suffered from a severe migraine headache (i.e., vomiting, nausea, etc.) which continued throughout the events, both before and subsequent to, the alleged criminal conduct of the Defendant.
... [B]ecause the medical condition the complainant experienced from the migraine headache she suffered on the action date of the case, the Defense identified a medical doctor in the Rankin County area, Dr. Howard Katz, during the spring of 2007 who is qualified to give expert testimony in the physiological and psychological effects on the human body during a severe attack of a migraine headache.
[[Image here]]
[T]he expert testimony of Dr. Katz is essential to virtually every aspect of the Defendant’s case to be presented at trial, without which, he will be severely prejudiced.
Additionally, in Abernathy’s Notice of Witnesses and Reciprocal Discovery, he stated that “Dr. Katz will testify as to the physiological and psychological effects of migraine headaches.”
¶ 32. Abernathy discussed the relevance of Dr. Katz’s testimony on two separate occasions during trial and again during the argument of his Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in the Alternative, Motion for New Trial. The first time the issue was raised during trial was during a lunch break when the State noticed Dr. Katz sitting in the courtroom and notified the court that it objected to Abernathy calling Dr. Katz as a witness. During this discussion, Abernathy’s counsel explained:
Your Honor, Dr. Howard Katz is here today and he’s been noticed as an expert — as an expert witness in this case. Dr. Katz is an expert in migraine headaches ....
[Hje’s here ... to discuss and explain what a migraine headache involves and the physiological events [sic ] as well as psychological, generally, on those who suffer from it, and that has relevance in this case because the victim in this case has alleged that she was compromised physically because of the migraine headache and that she was unable to protect herself in some regard and to some degree from the defendant. She talks about faking a seizure or something.
Dr. Katz is basically here to merely explain what the migraine headache is and how it affects someone such as [Tammy[6]] in this case.
¶ 33. The issue of Dr. Katz’s testimony was again discussed during trial when Abernathy’s counsel, before calling his first witness, made a motion in limine regarding this issue. In support of its argument that Dr. Katz’s testimony was relevant and should be admitted, Abernathy’s counsel stated:
*329 Your Honor, the victim in this case, just a few moments ago, said that she has been diagnosed, since high school, with a migraine headache condition of some sort. She has suffered from those since that age, since high school age. Dr. Katz is here to not — not to offer any kind of conclusion or expert opinion on what David Abernathy may or may not have been involved in at that house that evening, but merely to describe for the jury the migraine headache and what it means as far as its affect [sic ] or possible effects on suffering and such.
[[Image here]]
Your Honor, the migraine — the migraine headaches, and this is what Dr. Katz will show, migraine headaches are responsible for a wide variety of, let’s say mispereeived, misperceived events in one’s life while they’re having such. In other words, the sufferer of a migraine headache may perceive something about their environment that is not actually there, which is not part of that environment, and testimony today would be merely to give case history an example of that and nothing more.
¶ 34. Abernathy’s counsel explained the relevance of Dr. Katz’s testimony a final time during the argument of Abernathy’s Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in the Alternative, Motion for New Trial. Abernathy’s counsel explained:
As the court no doubt is aware, your Honor, a basic tenet of the rules of evidence with regards to the relevance of evidence is ... whether any piece of evidence ... would tend to make a fact or consequence more or less likely or more or less probable than that fact or consequence would have been without that ... particular piece of evidence.
In this case, one of the facts or consequence at trial was whether or not the victim, as alleged ... accurately recalled the events that ... were testified to.
[[Image here]]
Dr. Katz was proffered to testify with respect to the effects of migraine headaches upon individuals, and in particular the propensity ... that migraine headaches, among other things, caused not necessarily hallucinations, but cause the possibility that a migraine could cause a person to inaccurately recollect events that unfolded during that period of time that the person was suffering from migraine headaches.
So we submit, your Honor, that ... this proffered testimony would no doubt ... have been relevant to the issue of whether or not the victim, as alleged, accurately recalled the events of propensity to the sexual battery.
[[Image here]]
[T]he victim did testify that she was diagnosed with migraines and, therefore, we submit that there was sufficient basis to allow Dr. Katz to expound on ... what symptoms that particular condition could cause and specifically how that particular condition could have affected the accuracy of the victim’s recollection of the ... events.
¶ 35. In sum, Abernathy complied with Rule 103 and the relevant caselaw by adequately explaining to the trial court and into the record why Dr. Katz’s testimony was relevant and important to his theory of defense.
II. The trial court abused its discretion when it found Dr. Katz’s testimony irrelevant.
¶ 36. As the majority notes, the standard of review for the admission or exclusion of expert testimony is abuse of discretion. Taylor v. State, 954 So.2d 944, 948-49 (Miss.2007) (citing Miss. Transp. *330 Comm’n v. McLemore, 863 So.2d 31, 34 (Miss.2003)). It was an abuse of discretion to exclude Dr. Katz’s testimony about migraines because testimony was offered that Tammy had a migraine on the evening of the alleged assault, and therefore, expert testimony regarding the effects of migraines would have been relevant.

A. Testimony was offered that Tammy had a miyraine on the eveniny of the alleyed assault.

¶ 37. During direct examination of Tammy, she testified that she had suffered from a migraine on the evening of September 6, 2005 — the evening of the alleged assault. She explained:
I had had it [i.e., a headache] all afternoon and it just got worse as the night went on. While we [i.e., Jennifer and I] were riding around [in the car doing errands] it got really bad. And by the time we got home, I asked her [i.e., Jennifer] for something to take to make it feel better. So she gave me — I don’t know what it was. It was probably Tylenol or an Excedrin or something. But I took that and for the rest of the night it just got worse and worse and worse.
[[Image here]]
[S]he and I both had migraines in the past and I knew she would have something to take for it, because I didn’t bring anything with me.
¶ 38. Further, when Tammy was asked during direct examination what type of medication she would normally take if a migraine came on, she explained that she would normally take Darvocet, a drug legally obtained only by prescription. In other words, a medical professional at some point must have diagnosed Tammy with a migraine condition before prescribing her the drug Darvocet.
¶ 39. Moreover, when Tammy was asked during cross-examination whether she was “suffering from a migraine headache” the evening of the alleged assault, she replied, ‘Yes, sir.” She went on to explain that she had been diagnosed with a migraine condition, that it was common for her to get migraines, and that she had suffered from them since she was in high school.
¶ 40. In addition, when Abernathy’s counsel asked on cross-examination, “Previously or earlier in that same evening when you were having symptoms from the migraine, did that include nausea — and vomiting and so forth?” Tammy responded ‘Yes, sir.”
¶ 41. Jennifer and Justin testified that during the evening in question, Tammy referred to her headache as a migraine. Further, Jennifer testified: “... [Tammy] did get sick from her migraine and she threw up” and “I knew she had migraines .... ”
¶ 42. Lastly, in the State’s Disclosure of Trial Witnesses, which was provided during discovery, the State informed Abernathy that “[Tammy] will testify that on the evening of September 6, 2005, that she was suffering from a migraine headache and was feeling very ill.” In other words, even the State (which now argues that it is questionable that Tammy had a migraine that evening) at one time asserted that Tammy did in fact suffer from a migraine that evening.
¶ 43. In sum, Tammy’s friends testified that Tammy had told them on the evening of the alleged assault that she was suffering from a migraine; Tammy, as well as her friends, testified that Tammy had a very bad headache that evening and that she also had vomited; Tammy herself testified that she had suffered from a migraine that evening; Tammy testified that her doctor had diagnosed her with migraine headaches and that she had suf *331 fered from them since high school; Tammy testified that she had been prescribed Darvocet for her migraine condition; and lastly, Tammy told the prosecutors that she had a migraine that evening, and they informed Abernathy that this fact would be a part of Tammy’s testimony.

B. Dr. Katz’s testimony was relevant.

II44. In light of the testimony regarding Tammy’s history of migraine headaches and her symptoms during the evening of the alleged assault, Dr. Katz’s testimony about migraines and how they may impair sufferers’ ability to recall events accurately was relevant. Rule 401 of the Mississippi Rules of Evidence explains that evidence is “relevant” when it has a “tendency to make the existence of any fact that is of consequence to the determination of the action [e.g., the fact that Tammy accurately recalled the events of the evening in question] more probable or less probable than it would be without the evidence.” Miss. R. Evid. 401. See also Investor Res. Servs., Inc. v. Cato, 15 So.3d 412, 417 (Miss.2009) (“Rule 401 favors admission of the evidence if it has any probative value. ‘[T]he threshold for admissibility of relevant evidence is not great. Evidence is relevant if it has any tendency to prove a consequential fact.’ ” (internal citation omitted)). In addition, Rule 702 of the Mississippi Rules of Evidence provides that “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.... ” Miss. R. Evid. 702.
¶ 45. Dr. Katz’s testimony would have assisted the jury in understanding what bearing Tammy having a migraine that evening had on the case, and in determining whether Tammy’s recollection of that evening’s events had been impaired. The ability of a witness — not to mention the prosecution’s key witness — to observe and recollect the assault about which she is testifying is of utmost relevance.
¶46. Relevant evidence “may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” Miss. R. Evid. 403. As discussed above, the testimony introduced at trial regarding Tammy’s history of migraines and her symptoms during the evening of the alleged assault makes the probative value of Dr. Katz’s testimony significant. Second, the only “danger” (of those dangers listed in Rule 403) that the State raised during discussions of the admissibility of Dr. Katz’s testimony was the danger of confusion of the jury. While Dr. Katz’s testimony likely would have caused the jurors to consider the possibility that Tammy’s ability to observe or recollect that evening’s events was impaired, it would not have confused the jurors, and it certainly would not have confused them to the extent that the confusion would have outweighed the probative value. Furthermore, the State would have had the opportunity during cross-examination of Dr. Katz to attack the weight and worth of his testimony.
¶47. Even the trial court seemed to agree that when a victim testifies that she had a migraine on the date and time of an alleged assault, expert testimony regarding migraines and their effects on those who suffer from them would be relevant. At the hearing regarding Abernathy’s Motion for Judgment of Acquittal Notwithstanding the Jury Verdict or, in *332 the Alternative, Motion for New Trial, which occurred nearly six months after the trial, the trial court heard arguments regarding the relevance of Dr. Katz’s testimony, and in closing remarks stated:
If I remember correctly, I think the lady testified that she had a headache, but it was not a migraine headache, that she had them before. And if she didn’t have a migraine headache, then Dr. Katz’s testimony was not necessary. It was not relevant.
If she had testified that she had them, experienced a migraine headache that night, then you’ve got a whole different situation. She didn’t testify to that. That was something that the defendant brought to the court’s attention, and since he was drunk, I don’t know he knew that she had a migraine headache. So, the motion is denied.
(Emphasis added.) Again, Tammy did testify that she had a migraine the evening of the alleged assault; the trial court did not correctly recall Tammy’s testimony. At trial, the trial court itself noted that Tammy had testified that she had a headache and that “she used the term migraine to describe it.” Thus, but for the trial court’s erroneous recollection that Tammy had testified that she did not have a migraine on the evening in question, it appears the trial court would have found Dr. Katz’s testimony relevant.
¶ 48. It is true that the trial court, earlier in the proceeding, found Dr. Katz’s testimony irrelevant on other grounds— those grounds being, namely: 1) no testimony of a medical nature was offered that would classify Tammy’s condition on the evening in question as a migraine, and 2) Dr. Katz would not be testifying to the effects that migraines have on Tammy specifically, but rather to the effects migraines have, generally, on people who suffer from them. As just noted, however, in the trial court’s final remarks on the issue of Dr. Katz’s testimony, it agreed that when a victim testifies that she had a migraine on the date and time of an alleged assault, expert testimony regarding the effects of migraines would be relevant.

C. A defendant has a right to have every lawful defense he asserts presented to the jury.

¶ 49. A defendant has a fundamental right to have every lawful defense he asserts presented to the jury, even if that defense is highly unlikely. See Chinn v. State, 958 So.2d 1223, 1225 (Miss.2007) (“... every accused has a fundamental right to have [his] theory of the case presented to a jury, even if the evidence is minimal.”); Phillipson v. State, 943 So.2d 670, 671-72 (Miss.2006) (“We greatly value the right of a defendant to present his theory of the case....”); O’Bryant v. State, 530 So.2d 129, 133 (Miss.1988) (“It is, of course, an absolute right of an accused to have every lawful defense he asserts, even though based upon meager evidence and highly unlikely, to be submitted as a factual issue to be determined by the jury under proper instruction of the court. This Court will never permit an accused to be denied this fundamental right.”). According to Abernathy’s brief, his theory of defense was “first, that he did not commit the acts of which he stood accused, and second, the stated fact that the victim was suffering from a migraine headache and possibly enceinte at the time was material and crucial to the matter of the victim’s accurate recollection of the events, among other things, that transpired that evening.” Abernathy thus had a right to call Dr. Katz in support of his theory that the migraine headache Tammy had the evening of the alleged assault may have caused her to recollect inaccurately what happened between the two of them.
*333 Conclusion
¶ 50. In conclusion, I disagree with the majority’s finding that Abernathy failed to make a sufficient proffer concerning Dr. Katz’s testimony; I conclude that Abernathy made an adequate proffer, satisfying the purpose of Rule 103. In addition, I conclude that the trial court abused its discretion in finding Dr. Katz’s testimony irrelevant. Accordingly, I dissent and would reverse and remand this case for a new trial with instructions to the trial court to admit Dr. Katz’s testimony.
WALLER, C.J., KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.

. As the majority has noted, "Tammy” is a pseudonym used by this Court to protect the victim’s identity.